UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWNNIE E. JENNINGS,

    Plaintiff,

v.                                              Case No. 11-14439
                                              Honorable Patrick J. Duggan
NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this action to recover benefits under a homeowners insurance policy issued by Nationwide Mutual Fire Insurance Company ("Nationwide"). Presently before the Court is Nationwide's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 on April 20, 2012. The motion has been fully briefed and the Court held a motion hearing on June 13, 2012. For the reasons that follow, the Court grants Nationwide's motion.

### I. Standard for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II. Factual and Procedural Background

In 2003, Plaintiff purchased a home on Appleton in Dearborn Heights, Michigan. Beginning in 2005, she insured the home under a Nationwide Elite/Homeowners Insurance Policy ("Policy"). When the home suffered extensive fire loss in 2006, Nationwide paid Plaintiff's claim under the Policy.

Plaintiff thereafter began experiencing financial problems and, in 2008, received a

2

notice of foreclosure with respect to the property. Plaintiff tried unsuccessfully to sell the home. She then was approached by a neighbor, Sherita Hines ("Ms. Hines"), who was interested in renting the house. Ms. Hines began renting the home sometime before August 2009. Plaintiff did not live at the home while Ms. Hines was a tenant. Instead, she maintained residences at two apartments before moving to Woodbine Street in Detroit in December 2009. Plaintiff, however, continued to renew the Policy while Ms. Hines lived at the residence.

On August 5, 2009, a Sheriff's Sale was held with respect to the Appleton home. The redemption period expired on February 5, 2010. In October 2009, the boiler in the Appleton home broke and Plaintiff decided not to repair it. Due to the lack of heat, on or about December 3, 2009, Ms. Hines hand-delivered a letter to Plaintiff indicating that Ms. Hines and her family would be moving out of the home in thirty days and would return the keys to Plaintiff. (Def.'s Mot. Ex. 5.)

On February 1, 2010, Plaintiff went to the house and discovered that the locks had been changed and the house had been stripped of cabinetry, fixtures, and personal property. Ms. Hines had vacated the home, but had not yet returned the keys to Plaintiff. On February 9, Plaintiff submitted a notice of loss to Nationwide. (Def.'s Mot. Ex. 3.) On November 10, 2010, Nationwide denied the claim for lack of sufficient proof of contents. (Pl.'s Resp. Ex. 1.) In the denial letter, Nationwide wrote in part in closing:

> Unfortunately, since you were not able to provide sufficient proof of contents, we cannot provide coverage for this loss.

> Nationwide expressly reserves all of the rights and defenses the company may have under your policy of insurance and applicable law. This correspondence is not intended, nor shall it be construed to be an exhaustive listing of policy terms, conditions, or exclusions which might effect coverage under your policy. Nationwide reserves the right to supplement this Denial of Coverage for the [p]roof [sic] should facts and/or circumstances not currently known to Nationwide indicate the applicability of additional terms and/or exclusions.

(*Id.*)

On August 26, 2011, Plaintiff initiated this lawsuit against Nationwide in the Circuit Court for Wayne County, Michigan. In her Complaint, Plaintiff alleges that Nationwide's denial of her claim and failure to timely pay for her loss constituted a breach of contract and a violation of Michigan's Uniform Trade Practices Act. (Compl. ¶¶ 24, 28, 29.) Nationwide removed Plaintiff's Complaint to federal court based on diversity jurisdiction on October 10, 2011. (Doc. 1.)

## III. Nationwide's Arguments and Plaintiff's Response

Michigan law governs this case. Pursuant to Michigan law, "[i]t is without dispute that the 'insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable.'" *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 161 n.6, 534 N.W.2d 502, 505 n.6 (1995) (quoting *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 448 Mich. 395, 424-25, 531 N.W.2d 168 (Boyle, J., concurring)). Nationwide argues that the claimed loss is not covered by the Policy. Therefore, as the party moving for summary judgment, Nationwide merely has to inform the Court of the basis for its motion and identify those portions of the materials on file that it believes

4

demonstrate the absence of a genuine issue of material fact. *See supra*.

In its motion for summary judgment, Nationwide raises several arguments as to why the claimed loss was not covered by the Policy. First, Nationwide asserts that Plaintiff was not an "insured" under the Policy at the time of the loss because she did not reside at the location listed on the declarations (i.e., the Appleton address). Second, Nationwide contends that the Appleton home was not covered property because it was not used as Plaintiff's private residence, but instead as rental property. Finally, Nationwide argues that the alleged loss to personal property was not covered because it was not personal property owned or used by an insured as Plaintiff was not an insured. Because the claimed loss was not covered under the Policy and therefore no benefits were due to Plaintiff, Nationwide contends that Plaintiff's claim under Michigan's Uniform Trade Practices Act fails.

As an initial matter, Plaintiff argues that Nationwide waived its above defenses to coverage when it sent her a denial letter citing only the failure to provide sufficient proof of contents as the basis for denying her claim. Plaintiff otherwise fails to assert a meaningful argument in response to Nationwide's asserted interpretation of the Policy to exclude coverage.[1]

---

[1]Plaintiff argues that it would be inequitable to deny coverage because she paid the premiums due. (*See* Pl.'s Resp. Br. at 8.) Plaintiff, however, paid premiums for the coverage provided under the Policy. That is what she received. She also argues that "there is absolutely no evidence that had Defendant been notified of the rental of the home in 2008 there would have been any change in the amount of the premiums to be

(continued...)

The Michigan Supreme Court has held that, "[a]s a general rule, once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *Lee v. Evergreen Regency Co-Op & Mgmt. Sys., Inc.*, 151 Mich. App. 281, 285, 390 N.W.2d 183, 185 (1986) (citing *Castner v. The Farmers Mut. Fire Ins. Co. of Van Buren Cnty.*, 50 Mich. 273, 15 N.W. 452 (1883); *Smith v. Grange Mut. Fire Ins. Co. of Michigan*, 234 Mich. 119, 208 N.W. 145 (1926)). However, the Court also has recognized an exception to this rule where waiver and estoppel would broaden the coverage of a policy to protect the insured against a risk not included in or expressly excluded from the policy. *Id*. at 285-86, 390 N.W.2d at 185-86 (citing *Ruddock v. Detroit Life Ins. Co*, 209 Mich. 638, 177 N.W. 242 (1920)). As the Michigan Supreme Court stated in *Ruddock*:

> To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make.

209 Mich. at 654, 177 N.W. at 248. Applying the doctrine in the present matter similarly would require Nationwide to provide coverage beyond the terms of the Policy.

---

[1](...continued)
paid." (*Id*. at 8-9.) The Court does not believe that this argument is worthy of comment. Undoubtedly, however, Plaintiff never notified Nationwide before the loss occurred that she was not residing at the property and instead was using it as rental property. Perhaps if she had done so, Nationwide would have cancelled the homeowners policy altogether because the property no longer was being used as Plaintiff's residence.

Moreover, in its denial letter, Nationwide expressly reserved its right to assert other defenses to Plaintiff's claim. (Pl.'s Resp. Ex. 1 at 2.)

## IV. Applicable Law and Analysis

To determine whether Nationwide's interpretation of the Policy's coverage is correct, this Court must apply well-established rules of insurance contract construction. Under Michigan law, the construction of an insurance contract is a question of law for the court. *Morley v. Auto. Club of Michigan*, 458 Mich. 459, 465, 581 N.W.2d 237 (1998). The preliminary question is whether the language in the insurance contract is ambiguous.

"'A contract is ambiguous when its terms are reasonably and fairly susceptible to multiple understandings and meanings.'" *Old Line Ins. Co. of Am. v. Garcia*, 411 F.3d 605, 613 (6th Cir. 2005) (quoting *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)). In determining whether any terms used are ambiguous, the court's focus should be on how the terms would be interpreted by the "ordinary lay mind" or "average layman," rather than on how the particular insured interpreted them. *New York Life Ins. Co. v. Modzelewski*, 267 Mich. 293, 296, 255 N.W. 299 (1934). Where an ambiguity exists, the contract is to be construed liberally in favor of the insured. *Old Line Ins. Co. of Am.*, 411 F.3d at 613 (citing *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87, 514 N.W.2d 185 (1994)). If the terms used are unambiguous, "the court applies the terms in their "plain, ordinary, and popular sense." *Old Line Ins. Co. of Am.*, 411 F.3d at 613 (citing *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654, 505 N.W.2d 553 (1993)).

The Policy reads in pertinent part:

**Insuring Agreement**
**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.
The applicable limits of liability and optional coverages **you** have chosen are shown on the Declarations. This policy applies only to loss which occurs while the policy is in force.

**Definitions**
Certain words and phrases used in this policy are defined as follows:
1. "WE", "US" and "OUR" refer to the company shown on the Declarations as the issuing company.
2. "YOU" and "YOUR" refer to the named **insured** shown in this policy who resides at the **residence premises**. These terms also mean your spouse who resides at the same **residence premises**.
. . .
4. "INSURED" means **you** and the following if residents of **your** household at the **residence premises**:
   a) **your** relatives;
   b) any other person under age 21 and in the care of **you** or **your** relatives.
. . .
7. "RESIDENCE PREMISES" means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated.

(Def.'s Mot. Ex. 6, emphasis in original.) Applying these unambiguous terms, Plaintiff is not an insured under the policy because an insured is defined as ". . . the named insured . . . *who resides at* the residence premises." (*Id*. emphasis added.) There is no factual dispute that Plaintiff was not residing at the Appleton home (the "residence premises") at the time of the loss in February 2010, had not resided there since sometime in 2008, and had not returned there at the time of her deposition in this case on June 21, 2010. (Def.'s Mot. Ex. 2 at 6.)

8

Plaintiff indicates that the Appleton home is identified as her address on her driver's license. She argues that this "is evidence that [she] considered the Appleton home *a* residence . . .." (Pl.'s Resp. Br. at 9, emphasis added.) However, even if Plaintiff considered the Appleton home her "residence premises," there is no dispute that she had not resided there for over a year prior to the claimed loss and did not reside there at the time of the loss.

Further, the Policy defines what constitutes the covered dwelling as follows:

> **COVERAGE A- DWELLING**
> **We** cover:
> 1. the dwelling on the **residence premises** used mainly as **your** private residence, including attached structures and attached wall-to-wall carpeting.
> 2. materials or supplies on or adjacent to the **residential premises** for use in construction, alteration or repair of:
> a) the dwelling; or
> b) Coverage B - Other Structures.
>
> **We** do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.

(Def.'s Mot. Ex. 6, emphasis in original.) Considering similar language, the Michigan Supreme Court has held that the insured must reside at the "residential premises" at the time of loss for dwelling coverage to apply under a homeowner's policy. *Heniser*, 449 Mich. at 163-64, 534 N.W.2d at 506; *see also McGrath v. Allstate*, 290 Mich. App. 434, 802 N.W.2d 619 (2010).

The Policy provides coverage for personal property:

> **We** cover personal property owned or used by an **insured** at the **residence premises**. At **your** request, **we** will cover personal property owned by others. It must be on the part of the **residence premises** occupied by an

9

**insured**.

(Def.'s Mot. Ex. 6, emphasis in original). Again, for the reasons discussed above, Plaintiff was not an "insured" and therefore personal property at the residence was not "owned or used *by an insured*." Personal property owned by others was not covered-- in addition to there being no evidence of a request-- because it was not on "part of the residence premises *occupied by* an *insured*." (*Id*., emphasis added and original emphasis removed.)

Finally, the Policy provides coverage for loss of use, but this provision only applies "[i]f a covered loss **requires you to leave** the residence premises" or "[i]f a loss covered under this section **requires occupants to leave** . . . the residence premises." (Def.'s Mot. Ex. 6, emphasis added and original emphasis removed.) There is no dispute that Plaintiff did not move from the premises because of a covered loss. She moved to rent the property to Ms. Hines.

For the above reasons, this Court concludes that there are no genuine issues of material fact and that based on the unambiguous terms of the Policy, Nationwide is entitled to summary judgment with respect to Plaintiff's breach of contract claim.

Plaintiff's Uniform Trade Practices Act claim is premised on Nationwide's alleged bad faith adjustment of her claim and failure to pay within 60 days after her proof of loss. (Compl. ¶¶ 28, 29.) Because the Court concludes that Nationwide was not obligated under the Policy to cover the claimed loss, it further concludes that Plaintiff's Uniform Trade Practices Act claim fails.

## V. Conclusion

For the above reasons, the Court holds that Nationwide is entitled to summary judgment with respect to Plaintiff's claims.

Accordingly,

**IT IS ORDERED** that Defendant Nationwide Mutual Fire Insurance Company's Motion for Summary Judgment is **GRANTED**.


Dated: June 18, 2012                    s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
Allen J. Counard, Esq.
Kurt D. Meyer, Esq.